# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-209V**
UNPUBLISHED

BRINA THURSTON,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: August 17, 2026

*Laura Levenberg, Muller Brazil PA, Dresher, PA, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On January 7, 2021, Brina Thurston filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine. Petition at 1 (ECF No. 18).[3] The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$52,500.00 for actual pain and suffering.**

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] An amended petition was filed on December 29, 2021.

## I. Relevant Procedural History

This case was activated from "pre-assignment review" on May 23, 2022. (ECF No. 22). On July 20, 2023, Respondent filed a status report indicating that he was amenable to informal resolution. (ECF No. 30). Thereafter, the parties engaged in settlement discussions for approximately 11 months before reaching an impasse. Respondent filed his Rule 4(c) Report objecting to entitlement on September 25, 2024. (ECF No. 40). I thereafter ordered the parties to brief both entitlement and damages – Petitioner filed her brief on July 21, 2025, Respondent filed his response brief on September 3, 2025, and Petitioner filed a reply on September 8, 2025. The matter is now ripe for disposition.

## II. Medical Records

On December 9, 2018, Petitioner received a flu vaccine in her left deltoid at a Walgreens pharmacy. Exhibit ("Ex.") 3 at 2-4. Thirty-two days after vaccination, on January 10, 2019, Petitioner went to her primary care provider ("PCP"), Mandy Sacher, D.O., and complained of left shoulder pain. Ex. 7 at 44. Petitioner reported that she had been experiencing left arm pain for four to five weeks. *Id.* at 44-45. Petitioner elaborated that she went on vacation after the vaccination, and was unable to lift her arm; her arm hurt most when she raised her arm up and backwards in addition to while lying in bed. *Id.* On exam, Dr. Sacher noted positive impingement testing. *Id.* at 46. Dr. Sacher diagnosed Petitioner with a possible rotator cuff injury rather than brachial neuritis, and recommended a physiatry consult. *Id.* at 47.

On January 14, 2019, Petitioner had a surgical oncology appointment associated with recent genetic testing. Ex. 7 at 39. On February 2, 2019, Petitioner had a gynecology/oncology appointment. Ex. 7 at 32-33. Petitioner made no mention of left shoulder pain at either visit.

On February 6, 2019, Petitioner saw pain management specialist Niall Monaghan, M.D., with complaints of left arm pain. Ex. 7 at 25. Petitioner reported that her pain began after receiving a flu vaccine on December 8, 2018, and that the pain had gotten progressively worse since that time. *Id.* at 26. Petitioner described the pain as deep and achy and indicated that it was localized around the left shoulder. *Id.* Petitioner elaborated that the pain was exacerbated by moving her arm overhead, behind her, or when sleeping. *Id.* On exam, Petitioner had limited range of motion ("ROM") in her left shoulder and tenderness over her left deltoid. *Id.* at 29. Dr. Monaghan noted that Petitioner's symptoms were consistent with left-sided adhesive capsulitis, and suggested that her pain would resolve on its own over time. *Id.* at 30.

On February 6, 2019, Petitioner saw orthopedist Alexis Colvin, M.D., with complaints of left shoulder discomfort. Ex. 6 at 17. Petitioner reported that she had been feeling discomfort in her left shoulder since mid-December, after her vaccination. *Id*. Petitioner stated that her pain ranged from 0/10 to 8/10, and that the pain was worse in the morning. *Id.* On exam, Petitioner had mild pain to palpation over her left shoulder and exhibited pain with extreme ranges of motion. *Id.* at 17-18. Dr. Colvin ordered physical therapy ("PT") and discussed steroid injections in the future if Petitioner's pain did not improve. *Id.* at 18.

On March 4, 2019, Petitioner attended an initial PT evaluation. Ex. 5 at 16. Between March 4 and April 2, 2019, Petitioner had nine PT sessions. *Id.* at 13. At her last visit, Petitioner noted improved ROM but no change in her overall discomfort. *Id*. Petitioner was advised to continue at home exercises. *Id.*

On May 19, 2019, an MRI of Petitioner's left shoulder revealed mild subscapularis tendinosis with deep surface fraying and mild degeneration and undersurface fraying of the anterosuperior labrum. Ex. 6 at 19-20.

On June 23, 2019, Petitioner returned to Dr. Colvin for a follow-up visit. Ex. 6 at 8. Petitioner noted that her left shoulder pain "disappeared" for two months after completing PT. *Id.* at 8. Petitioner elaborated that her ROM had improved but she still had some discomfort with internal rotation. *Id.* On exam, petitioner had discomfort and decreased ROM in her left shoulder. *Id.* Dr. Colvin diagnosed Petitioner with possible early development of frozen shoulder and instructed petitioner to continue PT. *Id.* Dr. Colvin noted that cortisone injections could help if Petitioner's pain continued. *Id.*

On October 7, 2019, Petitioner saw her PCP with complaints of headaches. Ex. 7 at 16. On November 25, Petitioner had a neurology consult regarding her headaches. Ex. 7 at 11. Petitioner made no mention of left shoulder pain at either visit. On February 18, 2020, Petitioner saw her PCP for a wellness exam and did not mention shoulder pain. Ex. 4 at 7.

## III. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a

whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

> injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent's only objection to entitlement relates to the second QAI factor - that the onset of Petitioner's shoulder symptoms has not been shown to have occurred within 48 hours of vaccination. Report at 4-5. Petitioner first sought treatment 32 days after vaccination on January 10, 2019, and during that appointment reported her left shoulder pain first began "four to five weeks" prior, and that only during her next visit on February 6, 2019, did she state that her pain began on December 9, 2018. *Id.* at 5. Respondent also notes that during another visit that month, Petitioner noted that her left shoulder pain had been present since mid-December. *Id.*

Respondent's argument against entitlement is unavailing. As Respondent himself notes, the records from the February 6, 2019 medical appointment specifically list the onset of pain as December 9, 2018, and the inciting event as a vaccination, with pain since onset that has progressively worsened. Ex. 7 at 26. The fact that other records do not place onset with a similar level of specificity is not enough to prevent a finding that the evidence of onset preponderates in Petitioner's favor. I also note that Petitioner's more vague statements on onset still permit a finding that her pain began within 48 hours, as Petitioner's 32-day delay in seeking treatment fits within the timeframe contemplated by

"four to five weeks." Ultimately, Petitioner has carried her burden in establishing the onset of her symptoms within 48 hours of vaccination.

Regarding the other QAI criteria, the record is sufficient to find that Petitioner has met her evidentiary burden. There is no indication that Petitioner had any history of left shoulder pain prior to her December 9, 2018, flu vaccination, Petitioner's symptoms and treatment were limited to her left shoulder, and there is no evidence of any condition or abnormality that explain Petitioner's symptoms. Respondent also has not offered any argument against any of these criteria either. Therefore, Petitioner has satisfied all of the QAI requirements for entitlement for a Table SIRVA.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The record is clear that on December 9, 2018, Petitioner received a covered flu vaccine in her left arm. Ex. 3 at 2-4. Regarding the other requirements, there is ample proof that Petitioner suffered the residual effects of her injury for more than six months, and there is no indication that she has received any other award or settlement as a result of this injury. Therefore, Petitioner has satisfied all of the requirements for compensation.

## IV. Compensation to be Awarded

### A. Parties Arguments

Petitioner argues for a pain and suffering award of $62,000.00, maintaining that she had three visits to a specialist, underwent an MRI, did nine PT sessions, and had complaints of pain in her shoulder seven and a half months post-vaccination. Br. at 9. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Russo, Johnston,* and *Hamilton,* who received $63,000.00, $65,000.00, and $60,000.00, respectively for their past pain and suffering.[5] *Id.* 8-9.

In contrast, Respondent argues that "[P]etitioner's overall injury was mild." Resp. at 5. Respondent emphasizes the approximately five-month delay in seeking treatment

[5] *Russo v. Sec'y of Health & Hum. Servs.,* No. 20-1491V, 2022 WL 4717927 (Fed. Cl. Spec. Mstr. Aug. 31, 2022); *Johnston v. Sec'y of Health & Hum. Servs.,* No.18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021); *Hamilton v. Sec'y of Health & Hum. Servs.,* No. 21-346V, 2023 WL 4635923 (Fed. Cl. Spec. Mstr. May 13, 2019).

for her injury, and the relatively limited amount of treatment that Petitioner received. *Id.* Respondent does not argue for a specific dollar amount for pain and suffering in the instant cases but requests an award consistent with awards in other mild SIRVA cases. *Id.* Respondent has also included a chart of 13 cases he considered to involve mild SIRVA injuries with pain and suffering awards ranging from $25,000.00 to $45,000.00. *Id.* at 7--9.

### B. Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed declaration, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

This record demonstrates that Petitioner's symptoms ultimately fall on the milder side when compared to other compensated moderate SIRVA cases. Petitioner reported pain ranging from 0/10 to 8/10, suggesting a waxing and waning nature to her symptoms where she was able to experience at least some temporary relief. Ex. 6 at 17. She began PT approximately three months after vaccination and had nine total sessions. At a follow-up appointment with her orthopedist on June 23, 2019, she indicated that her shoulder pain had "disappeared" for two months although it had recently returned with certain motions. *Id.* at 8. However, that was also the final time Petitioner sought formal treatment for her shoulder or even mentioned it at any medical appointment. Petitioner's orthopedist recommended that she continue with PT at this session, which Petitioner ultimately did not do, further underscoring that her symptoms had meaningfully resolved not long thereafter. *Id.* Ultimately, the record supports a finding that Petitioner's compensable symptoms did not persist for much longer than seven months. Petitioner's course of treatment over this period was also exclusively conservative – 9 PT sessions, 1 MRI, and 4 total medical appointments for her shoulder.

In offering comparable cases, Petitioner herself has conceded that her injury is ultimately less severe than the injuries in *Russo* and *Johnson*. Reply at 3. However, her injury is also less severe than the one in *Hamilton*. The *Hamilton* petitioner underwent 31 sessions of PT, 1 MRI, and required prescription oral anti-inflammatories over a treatment course of approximately eight months. *Hamilton*, 2023 WL 4635923 at *5. Although the records in that case did not record any specific pain levels, that decision notes that "Petitioner sought care within three weeks in the early days of the stay at home orders related to the COVID-19 Pandemic, suggesting some urgency and intensity to her pain levels." *Id.* Given that the *Hamilton* petitioner engaged in over three times as much PT in a roughly similar time period, it is reasonable to infer that Ms. Thurston's injury was ultimately not as severe.

Respondent, on the other hand, has not advocated for a particular amount, only arguing that he considers Petitioner's injury to be a mild SIRVA and providing a list of cases with compensation ranging from $25,000.00 to $45,000.00. Resp. at 7-9. But simply citing to a range of cases, and then requesting that I choose an award that is "consistent with previous mild cases for pain and suffering," does not provide adequate aid in resolving the parties' dispute. As has been articulated in many cases, awarding an amount of pain and suffering is an art and not a science, and it is thus incumbent upon the parties to express their views as to what *specific* award is proper. As no two cases are identical, it is to be expected that awards may deviate somewhat from the amounts that each party proposes, but I continue to look to the parties to provide case law to support their proposed award and to achieve a body of cases that are consistent, predictable, and fair.

A general review of the cases Respondent categorizes as mild suggests that Petitioner has ultimately suffered a moderate injury (although on the lower side of that spectrum). Compared to these mild cases, Petitioner reported higher maximum pain levels and ultimately required *some* PT – many of Respondent's cases, even those at the higher end of the range, involved injuries which did not even necessitate formal PT.

Petitioner's case is more similar to *Norton* and *Rayborn*, although still slightly less severe, with both of those petitioners undergoing more PT and receiving one cortisone injection in addition to an MRI (although Ms. Thurston reported higher maximum pain levels). *See Norton v. Sec'y of Health & Hum. Servs.*, No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021); *Rayborn v. Sec'y of Health & Hum. Servs.*, No. 18-226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020). Ultimate, given the specific facts of this case, I find that $52,500.00 is a reasonable award for Petitioner's actual pain and suffering.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $52,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[7]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of <u>$52,500.00</u>, representing compensation for her actual pain and suffering, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master